UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL T. PIKAART,

        Plaintiff,                        Case No. 1:17-cv-363

v.                                                     Hon. Robert J. Jonker

FINANCIAL FREEDOM,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is a an action brought by *pro se* plaintiff Daniel T. Pikaart (sometimes referred to as "Pikaart") against defendant Financial Freedom. Compl. (ECF No. 1).[1] This matter is now before the Court on defendant's motion to dismiss (ECF No. 9). In the motion, defendant identifies itself as "CIT Bank, N.A.", and states that plaintiff incorrectly identified it as "Financial Freedom a division of Cit Bank NA." *See* Motion (ECF No. 9, PageID.25).

        **I.**        **Background**

        In this action, plaintiff seeks to stop state foreclosure proceedings based upon a default of the terms of an adjustable rate home equity conversion mortgage ("reverse mortgage") of property owned by his now-deceased wife. The basis for plaintiff's federal question jurisdiction and his cause of action is difficult to glean from his complaint. When asked to explain the basis for federal jurisdiction, plaintiff alleged (in his words):

> In the case of a person with a revers mortage upon their death a surviving spouse claimed to not be on the mortgage mortgage documents (in this case the Note) but on all the rest of the documents Financial Freedom claiming the Mortgage

---

[1] The Court notes that the body of the complaint included as defendant no. 2 "Trott Law Attorney for Defendant." *See* Compl. (ECF No. 1, PageID.2). This appears to be an error by plaintiff; there are no allegations related to "Trott Law," which was neither listed in the caption nor served with a summons and complaint.

Mature. Thus disallowing Danie Pikaart the surviving spouse of Judith Ann Pikaart to maintain ownership and possession until Death, Sale, or Vacating the property according to Reverse Mortgage HUH HECM rules which is a violation or Daniel Pikaart's rights.

Compl. (ECF No. 1, PageID.3).

Plaintiff set forth the following Statement of Claim (in his words):

Plaintiffs spouse died 4/20/2016 Freedom Financial has claimed mortgage Mature and is claiming plaintiff may not maintain ownership and reside in property becasuse he did not sigh the mortgage NOTE while he did sign all the other mortgage documents. According to HUD rules said position is a violation of Plaintiff rights. According to Bennett et al v Donavan and HUD rules surviving spouse has the right to maintain ownership and occupy said property in question until Death, Sale or moving from said property even if they are not on all the documents.

*Id.* at PageID.4.

Plaintiff seeks the following relief (in his words):

The court file an injunction to stop any forclosur action and allow the Plaintiff to stay in possession of the property until Death, Sale or Vacating without further action. (note property is on the market with the Grand Rapids Real Estate Multiple Listing Service) and any continued action by Freedom Financial would cause irrepreble harm to the value of the property on an open sale from bargain hunters and would damage plaintiffs ability to keep the sale from being considered a distresed sale which would lower the sale price. Said distressed sale could cost Plaintiff more than $50000.00 in equity.

*Id.* at PageID.4.

## II. Legal standard

Defendant seeks to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

> inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In addition, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008). Here, although plaintiff's claim arose from a real estate transaction, did not attach any documents to his complaint or explain the transaction in any detaril. However, defendant attached a number of documents central to the claim (e.g., the reverse mortgage, note, quitclaim deed, etc.), which the Court will review in evaluating the motion.

Finally, it is well established that *pro se* complaints, like the one filed in this action, are held to "less stringent standards than formal pleadings drafted by lawyers." *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the duty to be "less stringent" with *pro se* complaints does not require this Court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16, 19 (lst Cir. l979).

### III. Discussion

Defendant contends that plaintiff's complaint does not allege a cause of action. Assuming that plaintiff could amend the complaint to properly designate Cit Bank, N.A. as the

3

defendant, such an amendment would not salvage plaintiff's claim. Based on plaintiff's allegations and the documents submitted by defendants, it appears that he filed this action to stop the foreclosure of the subject property, commonly known as 504 Worcester Dr. NE, Grand Rapids, Michigan. The foreclosure arose under state law, based upon the terms of a reverse mortgage in the amount of $270,000.00, which was executed by plaintiff's now-deceased wife, Judith A. Pikaart on February 11, 2009. *See* Reverse Mortgage (ECF No. 10-2).[2] Plaintiff signed the mortgage as "her husband." *Id*. However, plaintiff did not sign the note, which Judith A. Pikaart signed on that date. *See* Adjustable Rate Note (ECF No. 10-1),

> One court explained the nature of a reverse mortgage as follows:
>
> A Home Equity Conversion Mortgage, commonly referred to as a "reverse mortgage," allows older homeowners to convert their accumulated home equity into liquid assets. In a reverse mortgage, the borrower receives either a lump sum, periodic payments, or a line of credit from a lender based on this accumulated equity. It is the reverse of a traditional mortgage because the borrower receives these payments, and need not repay the loan until certain triggering events occur, such as the death of the borrower or the sale of the home.
>
> Reverse mortgages are typically non-recourse loans, meaning that if the borrower defaults on the loan, and the sale of the home is insufficient to cover the balance of the loan, the lender cannot go after any of the borrower's other assets. Congress, worried that this risk would deter lenders from entering the reverse mortgage market, created a mortgage-insurance program, administered by the Department of Housing and Urban Development ("HUD"), as an incentive for lenders to provide reverse mortgages. This insurance program protects lenders from financial loss if certain conditions are met.

*Estate of Jones v. Live Well Financial, Inc.*, No. 1:17-CV-3105-TWT, 2017 WL 4176661 at *1 (N.D. Ga. Sept. 20, 2017) (footnotes omitted).

As an initial matter, plaintiff had no ownership interest in the property when he signed the reverse mortgage in 2009. Plaintiff had previously conveyed his interest in the property

---

[2] The record reflects that the reverse mortgage was assigned first to MERS and then to OneWest Bank, N.A. *See* Mortgage Assignments (ECF Nos. 10-9 and 10-10). The Court notes that the assignment to CIT Bank, N.A. is not in the record. However, plaintiff does not dispute that defendant has an interest in the reverse mortgage.

to his wife in a quitclaim deed dated October 31, 2008, and recorded November 6, 2008. *See* Quitclaim Deed (ECF No. 10-4). Plaintiff's wife passed away on April 20, 2016. *See* Death Certificate (ECF No. 11-1). While plaintiff alleged that a "distressed" foreclosure sale would cost him $50,000.00 in equity, he has alleged no facts related to his ownership interest in the equity.

The foreclosure has been addressed in another federal court proceeding. In its reply, defendant presented documents from plaintiff's Chapter 13 Bankruptcy case which shed some light on this matter. *See* records from *In re: Daniel Thomas Pikaart*, Chapter 13 No. DG-17-00092 (ECF No. 13-4). Plaintiff's bankruptcy included the now-deceased Judith Pikaart as a co-debtor. On January 10, 2017, CIT Bank, N.A. moved or relief from the automatic stay, stating in pertinent part: that CIT Bank, N.A. was the holder of the reverse mortgage; that no monthly payments are due because this is a reverse mortgage; that upon maturity, the loan is called due and payable; "[t]hat pursuant to the mortgage terms the loan will mature if a borrower dies and the property is not the principle [sic] residence of at least one surviving Borrower;" that Judith A. Pikaart was the only borrower to sign the note; that she is now deceased; that pursuant to its terms the reverse mortgage matured and the entire balance is due and owing to creditors; that the market value of the property is approximately $209,000.00 with an amount due and owing to the movant of $154,134.57; and that the automatic stay should be lifted to allow movant to foreclose upon the property. *See* Motion (ECF No. 13-4); Reverse Mortgage (ECF No. 10-2, PageID.54) ("Lender may require immediate payment in full of all sums secured by this Security Instrument if: (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower [.]"); Adjustable Rate Note (ECF No. 10-1, PageID.47) ("Lender may require immediate payment in full of all outstanding principal and accrued interest if: (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower[.]"). The bankruptcy court lifted the

stay and allowed CIT Bank, N.A. to commence foreclosure. *See* Orders (ECF No. 13-4, PageID.236-238).

Despite the fact that the bankruptcy court lifted the stay to allow the foreclosure, the gist of plaintiff's present federal claim is that CIT Bank, N.A. cannot foreclose because he is occupying the property as the surviving spouse of the borrower/mortgagor/owner. In this regard, plaintiff contends that "According to Bennett et al v Donavan and HUD rules surviving spouse has the right to maintain ownership and occupy said property in question until Death, Sale or moving from said property even if they are not on all the documents." Plaintiff is apparently referring to the district court case in *Bennett v. Donovan*, 4 F. Supp.3d 5 (D.D.C. 2013) (on remand), for the proposition that unspecified HUD rules require that CIT Bank, N.A. treat him as a borrower and allow him to remain in the property until his death or when he sells or vacates the property. On the appeal prior to remand, the D.C. Circuit addressed the same reverse mortgage language at issue in this case, i.e., "the balance became due and payable if '[a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower,'" and pointed out that the plaintiffs in that case were spouses of the borrowers, that neither of the plaintiffs "were 'borrowers' under the mortgage contracts" and that the lender commenced foreclosure under the terms of the reverse mortgage. *See Bennett v. Donovan*, 703 F.3d 582, 586 (D.C. Cir. 2013). On remand, the plaintiffs sought declaratory judgment that a HUD regulation violated federal law because it did not protect them as the spouses of the property owners who executed the reverse mortgages. *See Bennett*, 4 F. Supp. 3d at 7-8 ("Plaintiffs are widowed spouses of now deceased holders of reverse mortgages insured by HUD. Plaintiffs are not listed on the deeds of their homes, nor are they obligors on the reverse mortgages.") (footnote omitted).³ The trial court ultimately remanded the matter to HUD,

---
³ The HUD regulation at issue, 24 C.F.R. § 206.27, states in part "[t]he mortgage shall state that the mortgage balance will be due and payable in full if a mortgagor dies and the property is not the principle residence of at least one

6

the defendant in the lawsuit, finding that HUD violated a statute when it insured the reverse mortgages of the borrowers pursuant to agency regulation which permitted the loan obligations to come due upon their death regardless of whether their spouses (i.e., the plaintiffs) were still alive. *Id*. at 14.

Like the plaintiffs in *Bennett*, the plaintiff here, Pikaart, was neither an owner of the property or a borrower under the reverse mortgage. However, the decision in *Bennett* is inapplicable to plaintiff's claim "because [*Bennett*] only addresses HUD's mortgage-insurance program, and not the independent contractual rights of a lender to foreclose under the terms of the loan agreement." *Estate of Jones*, 2017 WL 4176661 at *4. *See Bennett*, 703 F.3d at 586, 588-89 (recognizing that reverse mortgages are enforceable even if HUD should never have insured them); *Aldi v. Wells Fargo Bank, NA*, 2015 WL 3650297 at *7 (D. Conn. Feb. 17, 2015) ("[T]he Court agrees with defendants that 12 U.S.C. § 1715z-20 governs HUD's insurance of reverse mortgages, not the independent contractual relationship between mortgagors and mortgagees.").

Here, because plaintiff was a non-borrowing spouse under the terms of the reverse mortgage, CIT Bank, N.A. could foreclose the property after the death of his wife, the borrower and owner of the property subject to the mortgage. *See, e.g., Jeansonne v. Generation Mortgage Co.*, 644 Fed. Appx. 355, 357 (5th Cir. 2016) ("Here, Jeansonne was a non-borrowing spouse and was therefore not a mortgagor under the contract. Thus, [the mortgage company] was free to foreclose after the death of the only borrower under the agreement."). Plaintiff's allegations have failed to state a cause of action which is plausible on its face. *See Iqbal*, 556 U.S. at 678;

---

surviving mortgagor...." *Bennett*, 4 F. Supp. 3d at 8. The federal law at issue, 12 U.S.C. § 1715z-20(j), states in part, "[t]he Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. For purposes of this subsection, the term 'homeowner' includes the spouse of the homeowner." *Id*.

7

*Jeansonne*, 644 Fed. Appx. 355; *Estate of Jones*, 2017 WL 4176661 at *2-5; *Aldi*, 2015 WL 3650297 at *7. Accordingly, defendant's motion should be granted.

## IV. RECOMMENDATION

For these reasons, I recommend that defendant's motion to dismiss (ECF No. 9) be **GRANTED** and that this action be **DISMISSED**.


Dated: October 31, 2017            /s/ RAY KENT
                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).